HORNECK, Plaintiff in error, v. STATE, Defendant in error.

*No. State 200. Argued May 7, 1974.—Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 370.)

2

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg*, state public defender.

For the defendant in error the cause was argued by *Robert D. Martinson*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

CONNOR T. HANSEN, J.   On or about June 28, 1972, the defendant's wife, Victoria, was murdered in Sheboygan county, Wisconsin. The defendant, Robert Hoganson, and Richard Losing were all members of a motorcycle club. The record reflects that the defendant was unhappy with his wife and had threatened and physically abused her on previous occasions. Two months before she was murdered, the decedent had reported to the police that defendant had pushed her out of a window clad only in her underwear.

At trial, Hoganson, who had been given immunity, testified that he first became involved with the motorcycle club on April 20, 1972, and had met the defendant at that time. During the course of the next two months, the defendant had mentioned to Hoganson, in the presence of other club members, various plans to kill his wife. On May 12th, May 19th or 20th, June 10th, and June 17th, defendant explained such plans to Hoganson but they were either foiled or abandoned. Hoganson was on probation as a "prospective member" and testified that the defendant had promised he would immediately become

a "full member" if he would help murder defendant's wife.

Hoganson testified that on the evening of June 28, 1972, he and Losing, in Losing's car, followed the defendant and his wife, in defendant's car, to a wooded area near Rhine Center. Defendant's wife had been lured to the area by telling her they were going to steal a boat and there would be money for all of them to share. The defendant told Hoganson to shoot his wife after he knocked her to the ground. After the defendant and his wife had argued for a period of time, he knocked her down and said to Hoganson, "Go ahead and shoot her." Hoganson testified that he then pulled his .25 automatic pistol and fired seven rounds in the decedent's direction, while she pled, "Please don't, please don't." After Hoganson had completely discharged his pistol, the decedent started running backwards holding her stomach. The defendant then pulled his .22-caliber revolver and shot her four or five times until she laid on the ground and did not move. The three men then obtained shovels from Losing's car trunk and buried the body. Defendant did not testify on his own behalf, and no witnesses were called by the defense to testify.

The validity of the proceedings of the trial are not at issue. The state public defender stated on oral argument ". . . the proceedings had in this case were without reversible error." We agree.

### Issue.

The issue on this appeal is whether the trial court abused its discretion in refusing to grant the defendant's motion for a new trial on the grounds of newly discovered evidence.

In this case the motion for a new trial because of purported newly discovered evidence is based upon the testimony of Losing, submitted at a hearing on the motion in August of 1973.

The murder of Victoria Horneck occurred on or about June 28, 1972. The defendant was convicted on October 20, 1972. In November of 1972, Losing pled guilty and was subsequently convicted of the crime of conspiring to commit the first-degree murder of Victoria. Secs. 939.31 and 940.01, Stats. He was sentenced to eight years in the state prison and has been confined there since November 9, 1972, working in the same department as the defendant. On November 4, 1972, after he had been arrested, he made a statement to the police that coincided with Hoganson's version of the crime. He confirmed this statement at the time of his conviction a few days later.

Then, at the hearing for the new trial based upon newly discovered evidence in August of 1973, Losing attempted to recant his two previous statements which corroborated the testimony of Hoganson given at the trial of the defendant. Losing also claimed he was not available at the time of the trial of the defendant, which took place but a short time before his arrest, because he was "hiding out."

The essence of the testimony of Losing at the hearing was that he and Hoganson had gone to the site of the crime with the defendant and his wife to look for an appropriate place for a national meeting of the various chapters of motorcycle clubs. Losing now claims that Hoganson shot the decedent, using both his own gun and that of the defendant to accomplish the act, and that neither he, Losing, nor the defendant knew Hoganson was going to kill defendant's wife.

In considering the testimony given by Losing at the trial, the trial court made the following statement:

"His recanting of his earlier statements now without any corroboration has no legal significance. . . . [T]he circumstances of Losing's earlier statements were such that his present affidavit and sworn testimony at the

hearing are not worthy of belief without some corroboration. It would not be reasonably probable that such testimony would be believed by a jury and therefore there is no reasonable probability that a different result would be reached on a new trial."

We are of the opinion that the trial judge exercised considered discretion in his evaluation of the testimony of Losing. It stretches one's imagination to the point of fantasy to believe that any jury would believe this uncorroborated new version of the crime.

The defendant either knew or should have known that Losing could testify about the facts of this crime. The record leaves no doubt about the fact that both the defendant and his trial counsel knew Losing was present during the commission of this crime and had witnessed it. The defendant's reliance on *State v. Evans* (1920), 98 Ore. 214, 192 Pac. 1062, 193 Pac. 927, is inappropriate. The existence of the new evidence considered in *Evans* was not known to the defendant at the time of trial.

Likewise, we find little merit in the defendant's reliance on *Taylor v. State* (1943), 180 Tenn. 62, 171 S. W. 2d 403. In *Taylor, supra,* page 66, the court stated, "We think reasonable diligence was here shown," to produce several witnesses unavailable at the time of trial. In the instant case, there is a complete absence of any showing of an attempt to exercise diligence to procure the testimony of Losing at trial. We would also observe that no request for an adjournment to enable the defendant to locate Losing was made, and he should have done so. *Simmons v. State* (1918), 167 Wis. 36, 166 N. W. 313.

On appeal, the defendant argues that the credibility of Losing versus that of Hoganson is, at least, a standoff, ". . . and probably Losing is the more credible of the two." As we understand it, this argument is advanced primarily upon the basis of comparing the prior criminal

records of the two men. However, the credibility of the testimony of Losing arises in this case because of the substantial conflict in his two prior statements relating to the commission of the crime and his testimony at the hearing on the motion for a new trial.

The trial court did not err in refusing to accept Losing's new version of the crime as newly discovered evidence sufficient for granting a new trial. *Zillmer v. State* (1968), 39 Wis. 2d 607, 159 N. W. 2d 669.

*By the Court.*—Judgment and order affirmed.