STATE of Wisconsin, Plaintiff-Respondent,†

v.

Michael B. BORHEGYI, Defendant-Appellant.

Court of Appeals

*No. 98–0567–CR. Submitted on briefs September 9, 1998.—Decided October 20, 1998.*

(Also reported in 588 N.W.2d 89.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James B. Connell* of *Crooks, Low & Connell, S.C.* of Wausau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J.   Michael Borhegyi appeals a judgment of conviction for arson and criminal damage to property and an order denying his motion for post-

conviction relief. Borhegyi contends that he was denied his constitutionally guaranteed right to a speedy trial. Borhegyi makes the following additional allegations of error: (1) a witness should not have been allowed to testify because he was not disclosed on the State's witness list; (2) a personal colloquy is necessary to verify a defendant's waiver of his right to testify, and (3) the trial court erred by not instructing the jury as to the limited use of other acts evidence received during trial. Because we conclude that Borhegyi was denied his right to a speedy trial, it is unnecessary to address the other assignments of error. Therefore, we reverse the judgment of conviction and order denying postconviction motions and remand with directions to vacate the judgment of conviction.

Michael Borhegyi was arrested for arson and criminal damage to property, the ultimate charges in this case, on August 26, 1995. Four months later the State charged him for these offenses in a criminal complaint dated December 28, 1995. A preliminary hearing was held January 2, 1996, and the matter was bound over for trial. On February 26, 1996, Borhegyi filed a demand for a speedy trial. A trial was ultimately held on January 30–31, 1997. A jury found Borhegyi guilty on both counts and the trial court sentenced him to ten years in prison on the arson count consecutive to an existing sentence. On the conviction for criminal damage to property, Borhegyi was sentenced to a nine-month jail term concurrent to the arson sentence.

■■■

Borhegyi's claim that he was denied his right to a speedy trial raises an issue of constitutional dimensions which is reviewed de novo. *State v. Ziegenhagen*, 73 Wis. 2d 656, 664, 245 N.W.2d 656, 660 (1976). In reviewing constitutional questions, the trial court's

findings of historical facts are subject to the clearly erroneous standard, but the application of those facts to constitutional standards and principles is determined without deference to the trial court's conclusion. *State v. Trammel*, 141 Wis. 2d 74, 77, 413 N.W.2d 657, 658–59 (Ct. App. 1987). Both the federal and state constitutions guarantee a criminal defendant the right to a prompt resolution of criminal charges made against him by the state. The Sixth Amendment to the United States Constitution provides that, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." This constitutional requirement is applied to the state through the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514 (1972). In addition, the Wisconsin Constitution, art. I, § 7, provides that, "In all criminal prosecutions the accused shall enjoy the right . . . in prosecutions by indictment, or information, to a speedy public trial . . . ."

The analysis used to determine whether a defendant's right to a speedy trial has been violated is set forth in *Barker* and was adopted in Wisconsin in *Day v. State*, 61 Wis. 2d 236, 244, 212 N.W.2d 489, 493 (1973). When a defendant asserts a violation of his constitutional right to a speedy trial, the court employs a four-part balancing test considering: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. The right to a speedy trial, however, is not subject to bright-line determinations and must be considered based upon the totality of circumstances that exist in any specific case. *Id.* at 530–31 (footnote omitted). If, under the totality of circumstances, the defendant was denied the benefit of his constitutional right to a speedy trial, dismissal of

the charges is required. *Id.* at 522. We review each of these factors in turn and conclude the analysis by weighing the totality of the circumstances presented by this case.

The first of the four factors considered is the length of delay. *Id.* at 530. This factor functions as a triggering mechanism. Until there is some delay which is presumptively prejudicial it is unnecessary to inquire into the other *Barker* factors. *Id.* The United State Supreme Court has noted that, "Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). The Wisconsin Supreme Court has similarly concluded that an almost twelve-month delay between a preliminary examination and trial was presumptively prejudicial. *Green v. State*, 75 Wis. 2d 631, 635, 250 N.W.2d 305, 307 (1977).

Before we can decide whether the presumption of prejudice applies in this case, we must first determine when the Sixth Amendment right to a speedy trial attaches. The United States Supreme Court in *United States v. Marion*, 404 U.S. 307, 321 (1971), stated that it "decline[d] to extend the reach of the amendment [speedy trial provision] to the period prior to arrest." A subsequent United States Supreme Court case interpreted *Marion* as holding that "the Speedy Trial Clause of the Sixth Amendment does not apply to the period before a defendant is *indicted, arrested, or otherwise officially accused* . . . ." *United States v. MacDonald*, 456 U.S.1, 6 (1982) (emphasis added); *see also Doggett v. United States*, 505 U.S. 647, 655 (1992) (speedy trial inquiry triggered by arrest, indictment, or other official accusation). In reviewing *Marion*, the Wisconsin Supreme Court has concluded that the Sixth Amend-

ment speedy trial provision applies once a defendant *"in some way formally becomes the accused." State v. Lemay*, 155 Wis. 2d 202, 209, 455 N.W.2d 233, 236 (1990) (emphasis added). The court further stated that speedy trial concerns attach when the complaint and warrant are issued. *Id.* at 210, 455 N.W.2d at 236.

The State suggests that Borhegyi's speedy trial rights commenced with the filing of the criminal complaint. We disagree. Borhegyi's speedy trial concerns attached at the time of his arrest, the date Borhegyi's first official accusation on the underlying charges occurred. *See id.* at 202, 455 N.W.2d at 234. The State does not explain why the period of delay should be calculated from the date the criminal complaint was filed rather than the date of Borhegyi's arrest, but rather merely suggests that at least a part of the confinement from arrest to the filing of the criminal complaint was attributable to matters other than the allegations of criminal conduct made in the complaint. We can ascertain from the record that Borhegyi was subject to a probation hold which Borhegyi, in his affidavit, contends resulted from the criminal charges in the underlying complaint. Because the State does not contest this assertion we assume its accuracy. Sometime thereafter, his probation, imposed on an unrelated charge, was revoked.

Because we cannot determine whether any portion of Borhegyi's precharge confinement is attributable to an unrelated administrative hearing, we look to the State for evidence in support of its position. The State concedes that at least a portion of Borhegyi's confinement from the date of arrest to the filing of the criminal complaint is related to the conduct contained in the underlying complaint. The State, however, does not demonstrate what portion of this time should not be

used to calculate the length of delay in assessing Borhegyi's claim that he was denied a speedy trial. We have no information before us and therefore will not address whether administrative proceedings, whether related to this offense or totally unrelated to the conduct charged in this complaint, should be used in determining the length of delay. Because we cannot ascertain what portion, if any, is not chargeable to the State in measuring the period of delay, we conclude that the delay must be measured from the date of arrest for these offenses in August 1995, to the date of his trial in January 1997, a period of seventeen months. We conclude that this seventeen-month delay is presumptively prejudicial, and we therefore proceed in our analysis of the remaining *Barker* factors. We address the weight accorded the length of this delay in subsequent discussion.

The second element to be considered in evaluating a claimed violation of a defendant's speedy trial rights is the reason advanced for the delay. *Barker*, 407 U.S. at 531. When considering this factor, differing weights are assigned to reasons that may be given for the delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Id*. (footnote omitted).

We begin by observing that the State does not explain the four-month delay between Borhegyi's arrest in August, 1995, and the issuance of the criminal

complaint in December, 1995. This case was scheduled for trial in July 1996, almost a year after Borhegyi's arrest, but was removed from the trial calendar because of the need to try a juvenile case with statutory time limits. The trial was rescheduled for October 1996 but was again adjourned. The trial did not commence until January 30, 1997. The State does not explain why a trial date was not scheduled more promptly between the initial July trial date and the scheduled and subsequently adjourned October trial date. The State has failed to offer any explanation as to why the October trial date was adjourned. The State fails to explain why a trial date was not scheduled more promptly after the October trial date was adjourned. The State's inability to explain any of these circumstances weighs heavily against the State in determining this issue.

Cavalier disregard toward a defendant's right to a speedy trial is an element of delay that is to be weighed most heavily against the State. *Green*, 75 Wis. 2d at 638, 250 N.W.2d at 308. The State concedes responsibility for the delay but suggests its conduct constitutes no more than negligence. While even negligence weighs against the State, we conclude the State's failure to even offer an explanation for such a substantial delay exceeds negligence and evinces a cavalier disregard of Borhegyi's speedy trial right. The trial was not held for seventeen months following Borhegyi's arrest on the underlying charges and just short of one year following his demand for a speedy trial. The State can only explain why the July trial date was rescheduled. It does not explain why the matter was not promptly rescheduled, why the October date was ultimately adjourned, or why no date during the ensuing six months could be provided for Borhegyi's two-day trial. This suggests that Borhegyi's demand for a speedy

trial was ignored by the State or the trial court in scheduling his trial. The Wisconsin Supreme Court in *Green* identified the cavalier disregard of a defendant's right to a speedy trial as an element of delay which is to be weighed most heavily against the State. The State has a duty to both a defendant and to society to bring an accused to a speedy trial and we conclude here that the State bears the burden for failing to do so within the seventeen months that elapsed from the time of arrest to trial. *Id.* at 636, 250 N.W.2d at 307.

The third factor to be considered in resolving speedy trial concerns is whether Borhegyi asserted his right to a speedy trial. *Barker*, 407 U.S. at 531. This factor is undisputed. Borhegyi filed a written motion demanding a speedy trial on February 26, 1996. The motion was made shortly after the charges were filed in a criminal complaint.

The final factor to be considered is whether the delay resulted in prejudice to Borhegyi. This factor is assessed in light of a defendant's interests which the speedy trial right is designed to protect. *Id.* at 532. The *Barker* court identified three interests to consider: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility that the defense will be impaired. *See id.* We consider each of these factors as they relate to the facts of this case.

Because the State concedes that at least some portion of Borhegyi's pre-trial incarceration was directly related to the criminal conduct charged in the underlying complaint, we conclude that at least some minimal prejudice flowed from the significant length of time Borhegyi was forced to wait until the criminal charges against him were resolved. Minimal prejudice is sufficient to support our conclusion that Borhegyi was

denied his right to a speedy trial in our ultimate balancing of the *Barker* factors, and therefore we do not analyze this factor further.

Another interest protected by the speedy trial right is the prevention of anxiety and frustration attendant in extensive trial delays. In *Green,* an incarcerated defendant learned of additional charges brought against him for another crime committed prior to his incarceration. Thirteen months passed between the time he learned of those charges and his trial. The Wisconsin Supreme Court concluded: "During the thirteen months after he learned of the charges, and before trial, he was undoubtedly concerned and anxious about the pending charges." *Id.* at 638, 250 N.W.2d at 308. Here, Borhegyi was required to wait seventeen months between the time of his arrest and the commencement of trial. Just as in *Green,* Borhegyi was undoubtedly concerned and anxious about the pending charges. Even if one were to conclude that this concern resulted in only minimal prejudice because he was already being confined on a sentence imposed for unrelated conduct as a result of a probation revocation, some anxiety existed based upon the extended period of time lapsing between Borhegyi's arrest and the actual trial.

The final interest that the right to a speedy trial is designed to protect is minimizing the possibility that the defense will be impaired. *Barker,* 407 U.S. at 532. Borhegyi claims that a material document and a defense witness were unavailable at the trial as a result of the delay.

Borhegyi claims the delay affected his ability to obtain a police document prepared by tribal police sergeant Christopher Delabrue. The document apparently reflected that Delabrue saw Borhegyi driving out of the area where the arson occurred approximately ten

minutes after the fire call was received on Delabrue's car radio. At trial this report could not be located so Delabrue's purported observations could not be corroborated by his official report made near that time. Nonetheless, we agree with the State that the absence of this report was not material to the defense because Borhegyi had acknowledged his presence in the area about that time and other witnesses testified that they saw Borhegyi in the area at the approximate time Delabrue observed him. This evidence was irrelevant because of Borhegyi's admission to the facts alleged to be contained in this report. The report corroborating Delabrue's testimony regarding Borhegyi's presence at the scene was not critical to his ability to offer a defense to the crimes charged.

Borhegyi also contends that the trial delay hindered the presentation of his defense because he was unable to locate defense witness, John Cook. Borhegyi asserts that Cook was prepared to rebut Richard Schreiber's testimony that Borhegyi confessed to the arson during the time the three men were confined in the same cell. Borhegyi maintains that Cook, had he been available, would have testified that Borhegyi made no admissions while he, Borhegyi and Schreiber were confined in the same cell. Defense counsel represented that he attempted to locate Cook but was unable to find him. Borhegyi also contends that the sheriff's department was unable to serve subpoenas issued for Cook in anticipation of trial. Because the sheriff and Borhegyi's counsel were unable to locate Cook on separate occasions to compel Cook's appearance at the scheduled trial, Borhegyi claims that he used reasonable diligence in attempting to compel Cook's appearance at the scheduled trial and that his failure

to do so was related to the delay in the commencement of the trial.

The State contends there is no direct evidence that the delay caused Cook to be unavailable and asserts that Cook was not in fact subpoenaed for the July trial. The State suggests that Borhegyi's failure to take proper steps to assure Cook's presence at trial or to memorialize Cook's testimony in the event Cook was unavailable at the trial itself was the result of Borhegyi's less than reasonable efforts to preserve and present this testimony at trial. The State, however, has not introduced independent evidence as to Cook's whereabouts or availability, nor has the State attempted to rebut defense counsel's claim that Cook was unavailable at the time of trial.

Cook's anticipated testimony, which purports to rebut Schreiber's testimony, is both relevant and material to Borhegyi's defense. The delay of more than one year certainly compounds the difficulty of locating prospective witnesses. Defense counsel's assertion that he was unable to locate Cook does not fully determine this issue because counsel must exercise reasonable diligence before a witness's unavailability is prejudice for which the State is responsible. *See Horneck v. State*, 64 Wis. 2d 1, 5, 218 N.W.2d 370, 372 (1974).

Whether defense counsel was diligent in attempting to locate Cook is not fully developed in the record. Defense counsel provides no evidence as to what steps he took to locate Cook. Accordingly, counsel has not demonstrated he used reasonable diligence in attempting to locate Cook. We do not decide whether the sheriff's return of the subpoena is sufficient to satisfy reasonable diligence because the prejudice we have already found relating to oppressive pretrial incarceration and prevention of anxiety are enough for us to

conclude that the seventeen-month delay resulted in at least minimal prejudice to Borhegyi. Under the circumstances of this case, minimal prejudice is all that is necessary to support our conclusion that Borhegyi was denied his right to a speedy trial and therefore we need not further analyze or develop this issue.

The four *Barker* factors are related and must be considered together. This requires a reviewing court to conduct a balancing test. *See id.* at 533. In this case, weighing all of the factors, we are convinced that the delay in bringing Borhegyi to trial was a violation of his constitutional right to a speedy trial under both the United States and Wisconsin Constitutions. The seventeen-month delay between Borhegyi's arrest and the actual trial is presumptively prejudicial. Borhegyi's confinement, extending more than five months beyond the bare minimum needed to trigger the presumption of prejudice, additionally weighs against the State. "[T]he presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652. Other factors brought into the balance further support a conclusion that Borhegyi was denied his right to a speedy trial. Borhegyi preserved his right to a speedy trial by filing his motion shortly after the charges were filed and he was required to wait almost one year before his demand was honored. A defendant's assertion of his right to a speedy trial is entitled to strong evidentiary weight. *Barker*, 407 U.S. at 531–32. Most significantly, the extended delay incurred here is disturbingly unexplained by the State. The State's inability to put forth any reasons for the seventeen-month delay (with the exception of the rescheduling of the July trial date) suggests that Borhegyi's speedy trial demand was not considered in scheduling his trial. Such a cavalier disregard of Borhegyi's speedy

trial right after his prompt demand was filed weighs most heavily against the State and is sufficient to tip the various factors which must be weighed in determining whether Borhegyi's right to a speedy trial has been violated. Finally, we conclude that the delay resulted in at least minimum prejudice to Borhegyi.

A comparison of the *Barker* factors present in *Green* and those present in the instant case further supports our conclusion that, upon weighing all of the *Barker* factors, Borhegyi was denied his speedy trial rights. In *Green*, the Wisconsin Supreme Court concluded that a twelve-month presumptively prejudicial delay, the State's assertion that negligence was the reason for the delay, the defendant's assertion of his right to a speedy trial, and defendant's minimal showing of prejudice of anxiety over the pending charges was insufficient to establish a denial of defendant's constitutional right to a speedy trial. The court, however, characterized the delay in *Green* as bordering on a denial of speedy trial rights, and noted it would probably have reached the opposite result had defendant been able to demonstrate one of several elements of delay, including whether the State's conduct evinced a cavalier disregard of defendant's right. *Id.* at 638, 250 N.W.2d at 308. In this case, the *Barker* factors on balance exceed those found in *Green*. Here, the State's failure to explain the delay amounts to a cavalier disregard of Borhegyi's speedy trial rights. Further, the length of delay exceeds that found in *Green* and consequently this factor weighs more heavily against the State. Finally, unlike *Green*, where the court found minimal prejudice only as it relates to prevention of anxiety, we conclude that the delay resulted in at least minimal prejudice to Borhegyi even though he asserted a claim of greater prejudice.

On balance, the *Barker* factors operate together to support Borhegyi's claim that he was denied the right to a speedy trial. While we assume at least minimal prejudice, the other factors all weigh heavily in Borhegyi's favor. While we are reluctant to use such an extreme remedy as dismissal of the charges against a defendant who has been convicted of serious criminal conduct, we are left with no alternative. A defendant's right to a speedy trial is meaningless if the State is permitted to cavalierly ignore a demand for prompt resolution of the charges and delays bringing a defendant to trial for seventeen months. The constitutional right of a speedy trial cannot be so cavalierly disregarded by the State in scheduling criminal trials. Based upon our resolution of this issue, it is unnecessary to address Borhegyi's other claims of error. We conclude that Borhegyi was denied his right to a speedy trial and, therefore, we direct that the trial court enter a judgment vacating the judgment of conviction against Borhegyi for arson and criminal damage to property.

*By the Court.*—Judgment and order reversed and cause remanded with directions.