**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**April 28, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.  2019AP33-CR**
**2019AP34-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2014CF4630
2014CF4631

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

THOMAS ERIC NELSON, JR.,

DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Milwaukee County: FREDERICK C. ROSA, Judge. *Affirmed*.

Before Brash, P.J., Blanchard and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.    Thomas Eric Nelson, Jr., appeals the judgments of conviction, following a jury trial, of five crimes charged in two cases that were joined for trial.  We affirm.

## BACKGROUND

**The Charges**

¶2    On October 16, 2014, Nelson was charged with one count of first-degree recklessly endangering safety with the use of a dangerous weapon, as a repeater, and one count of being a felon in possession of a firearm, as a repeater. According to the criminal complaint, on May 22, 2014, Nelson shot into a vehicle driven by B.P., hitting the vehicle and shattering the windows.  B.P. recognized Nelson as the shooter, telling police that he believed Nelson shot at him in "retaliation" and claimed that Nelson "was trying to kill him."  B.P. told police that the firearm Nelson used was "large," and was either a .40 or a .45 caliber. Nelson was charged in Milwaukee County Circuit Court case No. 2014CF4630.

¶3    Nelson was arrested on October 15, 2014, after police saw Nelson—who was wanted for the May 2014 drive-by shooting—at a school playground at 1:40 a.m.  When the officers exited their squad car and attempted to speak with Nelson, Nelson began to flee on foot, grabbing his waistband and throwing a concealed firearm to the ground.  Nelson was subsequently apprehended and police recovered a black Glock model 22 .40 caliber semi-automatic firearm loaded with twenty-three cartridges.  The same firearm had been reported stolen in an armed robbery that took place on August 7, 2014 in Milwaukee.  In Milwaukee County Circuit Court case No. 2014CF4631, the State charged Nelson with one count of being a felon in possession of a firearm, one count of obstructing/resisting an officer, and one count of carrying a concealed weapon, all as a repeater.

**The State's Motion to Introduce Other-Acts and for Joinder**

¶4     The State filed a motion to introduce other-acts evidence and a motion for joinder of case No. 2014CF4630 (the May drive-by shooting) and case No. 2014CF4631 (the October case) for trial. The other-acts evidence involved a shooting that occurred at B.P.'s residence on August 14, 2014. The State submitted that on that date, B.P.'s father, J.P., reported hearing more than ten gunshots fired in front of his home while B.P. was sitting on the front porch. Police recovered twelve brass casings from the scene of the shooting. Police determined that the casings were all fired from the same firearm—a .40 caliber Glock semi-automatic. The firearm matched the firearm related to Nelson's October 2014 possession of a firearm offense.

¶5     The State argued that the other-acts evidence linked Nelson to both the May 2014 drive-by shooting and the October 2014 incident and this was a significant part of the State's rationale for joinder. Specifically, the State argued that the firearm recovered from the October 2014 incident matched the firearm used to shoot at B.P.'s home in August 2014, and the May 2014 incident, which also involved shooting at B.P. The State contended that the other-acts evidence: linked Nelson to all three events; showed plan, identity, and knowledge; was relevant because it tended to show that Nelson shot at B.P.'s car in May 2014 with the same firearm Nelson attempted to discard in October 2014; had a probative value outweighing the potential for prejudice; and supported joinder because it connected the May 2014 and October 2014 incidents.

3

¶6      The trial court granted both of the State's motions.[1]

**June 2015 Adjournment**

¶7      Following Nelson's March 25, 2015 written demand for a speedy trial, a jury trial was scheduled for June 8, 2015.  On that day, trial counsel, Edward Wright, informed the trial court that he was prepared to proceed with trial, but that he did not have certain medical records and records from Time Warner Cable that he thought would be helpful to the defense.  Wright told the trial court that Nelson was aware of the missing records but wished to proceed with trial.  Nelson personally told the court that he was tired of waiting for trial, that his "body" was his "medical record," and that he was comfortable proceeding to trial without the records mentioned by Wright.  The State noted that the time period to hold a trial under the speedy trial demand was coming to an end.  The trial court then held an in-chambers discussion with the parties.  After the discussion, the trial court shared its "concern that this case really isn't prepared to go to trial."  On its own motion, the trial court adjourned the trial, finding that "for the matter to be fully and fairly tried, the appropriate information has to be available."  The trial court explained that pursuant to Wis. Stat. § 971.10(3)(a) (2017-18),[2] it was authorized to grant a continuance on its own motion "if the ends of justice served by taking action outweigh the best interest of the public and the defendant in a speedy trial."

---

[1]  The Honorable Thomas J. McAdams presided over the motion hearing.

[2]  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

4

**September 2015 Motion to Dismiss and Further Adjournment**

¶8     On September 21, 2015, the parties appeared before the trial court[3] and stated that they were prepared to proceed with the trial.  As relevant to this appeal, Wright told the trial court that Nelson believed his speedy trial rights were violated and asked the trial court to dismiss the case.  The trial court denied the motion, stating:

> Apparently the [c]ourt conducted some sort of balancing against this gentleman's right to go forward with the trial quickly as compared with his right to be able to have the information that was necessary to allow him to present his defense.  The judge felt it important that those records be available and looked at.  It isn't the [S]tate's fault.  It isn't Mr. Nelson's fault that the information was not available.  But the [c]ourt weighed those considerations, and I assume granted an adjournment on that basis.
>
> I would not look at it at this point in time and second guess the decision of the [c]ourt that had all of the information in front of it and particularly a dismissal where essentially the [S]tate would be prejudiced.  I don't think that [would be] appropriate where the State was not the cause of the adjournment and they requested that they go forward, just as the defense wanted to.

Later that day, the court began the jury selection process.

¶9     The following morning, outside of the presence of the jury, Wright informed the trial court that Nelson had filed a complaint with the Office of Lawyer Regulation against him.  Consequently, Wright moved to withdraw as Nelson's counsel. The trial court granted Wright's motion, noting that Nelson had been filing motions independent of Wright and that both Wright and Nelson had

---

[3] The Honorable Frederick Rosa presided over the motion to dismiss and the remainder of the trial.

5

brought multiple grievances to the court's attention. Over the State's and Nelson's objections, the trial court adjourned the trial.

¶10 The trial was ultimately conducted from January 25, 2016, through February 2, 2016. The jury found Nelson guilty as charged. In case No. 2014CF4630 (the May drive-by shooting case), the trial court imposed ten years of initial confinement and five years of extended supervision on the recklessly endangering safety count, and five years of initial confinement and five years of extended supervision on the felon in possession of a firearm count, to be served consecutively. In case No. 2014CF4631 (the October case), the trial court sentenced Nelson to five years of initial confinement and five years of extended supervision on the felon in possession of a firearm count, consecutive to the sentences in case No. 2014CF4630, and concurrent to the two one-year sentences on the obstruction and carrying a concealed weapon misdemeanor counts.

¶11 This appeal follows.

## DISCUSSION

¶12 On appeal, Nelson contends that: (1) his constitutional right to a speedy trial was violated; and (2) the trial court erred in granting the State's motion for other-acts evidence and joinder. We discuss each issue.

**Speedy Trial**

¶13 Nelson contends that the trial court erred when it denied his motion to dismiss for violation of his constitutional right to a speedy trial because from the date he filed his speedy trial demand until the date of his trial, the trial court adjourned the trial twice over his objections. Nelson argues that the trial court was

aware of Nelson's speedy trial concerns and asserts that the "prejudicial delay" was "overly oppressive."

¶14    "Both the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution guarantee an accused the right to a speedy trial."  *State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324.  Whether this right has been violated is a question of law that we review independently, although we accept any findings of fact made by the trial court unless they are clearly erroneous.  *See id.*, ¶10.

¶15    When assessing whether a constitutional speedy trial violation has occurred, we apply the four-factor test established in *Barker v. Wingo*, 407 U.S. 514 (1972).  *See Urdahl*, 286 Wis. 2d 476, ¶11.  We consider: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) whether the delay prejudiced the defendant.  *See id.* "The right to a speedy trial is not subject to bright-line determinations and must be considered based on the totality of circumstances that exist in the specific case." *Id.*    Here, considering the four *Barker* factors in light of the totality of the circumstances, we conclude that Nelson's right to a speedy trial was not violated.

¶16    The first *Barker* factor—the length of the delay—is a "triggering mechanism used to determine whether the delay is presumptively prejudicial." *Urdahl*, 286 Wis. 2d 476, ¶12.  Delays "approaching one year" are considered presumptively prejudicial.  *Id.*    The delay from the time of the filing of the complaints in these cases in October 2014 until the start of trial on January 25, 2016 was approximately one year and three months, and therefore, presumptively prejudicial.  Accordingly, we consider the remaining *Barker* factors.  *See State v. Borhegyi*, 222 Wis. 2d 506, 510, 588 N.W.2d 89 (Ct. App. 1998) (stating that

evaluation of all of the *Barker* factors is only called for if the delay was presumptively prejudicial).

¶17    The second *Barker* factor directs us to consider the reasons for the delay. *See Urdahl*, 286 Wis. 2d 476, ¶11. "When considering the reasons for the delay, courts first identify the reason for each particular portion of the delay and accord different treatment to each category of reasons." *Id.*, ¶26. "A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State, while delays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily." *Id.* "On the other hand, if the delay is caused by something intrinsic to the case, such as witness unavailability, that time period is not counted…. Finally, if the delay is caused by the defendant, it is not counted." *Id.*

¶18    Here, the record is clear that none of the delays were attributable to the State. The first delay, which occurred in June 2015, was a result of the unavailability of evidence. Although Nelson contends that the evidence was unnecessary to his defense, the trial court balanced Nelson's speedy trial rights against the interest of justice and adjourned the matter to allow Nelson to have a complete defense. Under the facts of this case, we conclude that a delay relating to the unavailability of evidence and the trial court's concern for a fair trial "is not counted." *See id.*

¶19    The second delay occurred in September 2015 after Nelson filed a complaint with the Office of Lawyer Regulation against his trial counsel, necessitating counsel's withdrawal and the appointment of new counsel. That delay—from September 2015 until January 2016, when Nelson's trial actually took place—stemmed from Nelson's own action.

¶20 The third ***Barker*** factor directs us to consider whether the defendant asserted his or her right to a speedy trial. *See **Urdahl***, 286 Wis. 2d 476, ¶11. In this case, it is undisputed that Nelson filed a speedy trial demand and repeatedly asserted his right to a speedy trial. We therefore assess the last ***Barker*** factor.

¶21 The final ***Barker*** factor directs us to consider whether Nelson was prejudiced by the delay in bringing him to trial. *See **Urdahl***, 286 Wis. 2d 476, ¶11. When assessing this factor, we consider "the three interests that the right to a speedy trial protects: prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense." *See **id.***, ¶34. None of these interests support Nelson's claim that he was denied the right to a speedy trial.

¶22 Nelson asserts that his pretrial incarceration was "oppressive" for purposes of satisfying the prejudice prong of the ***Barker*** test, but he offers no support for his conclusory statement, nor does Nelson allege that the delays themselves caused him anxiety or concern. Although anxiety and concern on the part of the accused is common in most criminal prosecutions and can be inferred on the part of many defendants when trials are delayed, Nelson cites no evidence suggesting that he actually experienced any sort of anxiety as a result of trial delays. Finally, the record does not support the contention that the delays hindered Nelson's ability to mount a defense. Indeed, the first delay was a result of the trial court's attempt to help Nelson build his defense by allowing time for the defense to obtain certain evidence. Nelson caused the second delay himself by filing a complaint against his trial counsel, creating a conflict of interest for counsel to which the trial court responded appropriately.

9

¶23    Under the facts of this case and in consideration of the **Barker** factors, we conclude that the length of the delay does not constitute a delay which was prejudicial and that Nelson was not denied his right to a speedy trial.

**Other-Acts Evidence**

¶24    Nelson contends that the trial court erred in admitting the other-acts evidence of the August 2014 shooting because the identity of the shooter was unknown, the evidence was hearsay, and the prejudicial effect of the evidence outweighed its probative value. We disagree.

¶25    Admissibility of other-acts evidence is governed by a three-step test: the evidence must be admitted for an acceptable purpose under WIS. STAT. § 904.04(2); it must be relevant; and its probative value must not be substantially outweighed by the danger of unfair prejudice. *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). The trial court's determination "to admit or exclude evidence is a discretionary decision that will not be upset on appeal" absent an erroneous exercise of discretion. *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262 (Ct. App. 1992) (citation omitted). Accordingly, we will sustain an evidentiary ruling if "the trial court examined the relevant facts, applied a proper standard of law, and ... reached a conclusion that a reasonable judge could reach." *See Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶26    Here, the trial court explained that the evidence was admitted for an acceptable purpose—namely, to establish identity and a plan. Noting that under the State's theories B.P. was the target of both the May and August incidents, and that the shell casings from the August incident matched the gun found in the October incident, the court stated "it does seem to me that the May and August

10

incidents establish an identity and something along the lines of a plan, and the October incident, when coupled with the August incident, certainly go to identity."

¶27     As to the relevance of the other-acts evidence, the court noted the similarity and connection between the charged offenses and the other-acts evidence, stating "[p]utting the gun in Mr. Nelson's hand on October 15 seems to put it in his hand on August 14. And that goes to identity on May 22, and motive and absence of self-defense."

¶28     Finally, in weighing the probative value of the evidence against the risk of unfair prejudice, the trial court found that "the balance goes in favor of admissibility. I think to some degree the evidence might clarify the evidence on identification." The trial court noted that any risk of prejudice could be minimized by a jury instruction informing the jury "on how to use the evidence." Because the trial court examined the relevant facts, applied the proper standard of law, and reached a reasonable conclusion, we are satisfied that the trial court properly exercised its discretion in admitting this evidence.

**Joinder**

¶29     Finally, Nelson argues that the trial court erred in joining case Nos. 2014CF4630 and 2014CF4631 for trial. Specifically, he contends that the modus operandi between the May and October 2014 incidents were materially different and that the court's decision to join the cases was based solely on its admission of the other-acts evidence. We disagree on each aspect of this argument.

¶30     Joinder of charges, pursuant to WIS. STAT. § 971.12, is proper when two or more crimes are of the same or similar character and occur over a relatively

11

short amount of time, or when they arise from the same act or transaction. *State v. Locke*, 177 Wis. 2d 590, 596, 502 N.W.2d 891 (Ct. App. 1993). Joinder is proper if the crimes charged "have a common factor or factors of substantial factual importance, [e].g., time, place, or [m]odus operandi, so that the evidence of each crime is relevant to establish a common scheme or plan that tends to establish the identity of the perpetrator." *Francis v. State*, 86 Wis. 2d 554, 560, 273 N.W.2d 310 (1979). The joinder statute "is to be broadly construed in favor of initial joinder." *State v. Salinas*, 2016 WI 44, ¶31, 369 Wis. 2d 9, 879 N.W.2d 609. The trial court's initial decision to join charges for trial is a question of law that we review *de novo*. *Id.*, ¶30.

¶31 We agree with the State's succinct analysis of the issue:

> [T]he October charges arose when, while police were pursuing Nelson as a suspect in the May drive-by shooting, he threw a [.40] Glock firearm to the ground and fled. Thus, the May and October cases were connected because one arose out of investigation of another case, occurred close in time, and were related to each other as part of Nelson's scheme or plan to avoid being caught for the May shooting. The other-acts incident of the August shooting provided additional linkage between the May and October cases, including the same victim, overlapping witnesses, and ballistics evidence confirming the gun used was a [.40] Glock.

Accordingly, we conclude that the trial court properly joined the cases.

¶32 For the foregoing reasons, we affirm the trial court.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

12