COURT OF APPEALS
DECISION
DATED AND FILED

September 4, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2022AP1765-CR**
**2022AP1766-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2014CF4078
2015CF1796

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

VICTOR YANCEY, JR.,

DEFENDANT-APPELLANT.

APPEALS from orders of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Colón, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   In this consolidated appeal, Victor Yancey, Jr., *pro se*, appeals the orders denying his postconviction motions.   On appeal, Yancey contends that:  (1) his constitutional right to a speedy trial was violated; (2) he was deprived of effective assistance of counsel; (3) prosecutorial misconduct occurred; (4) he was denied the right to represent himself at trial; and (5) the circuit court erroneously exercised its discretion by allowing a police officer to testify.   For the reasons discussed below, we affirm.

## BACKGROUND

¶2    On August 21, 2014, police responded to a shots fired complaint. According to the criminal complaint, Larry[1] told police that Yancey, who he knew, came to his house, knocked on his door, and told him to come outside. Larry opened the door and saw several other people.   One of the men, Andrew Kendle, shot into Larry's house multiple times.   Yancey was charged with attempted first-degree intentional homicide while using a dangerous weapon and endangering safety while using a dangerous weapon, both as a party to a crime.

¶3    While Yancey was in jail, he called Larry and offered him $500 not to go to court to testify.   The State charged Yancey in a separate case with intimidation of a victim as a party to a crime and attempted bribery of a witness.[2]

---

[1] Pursuant to WIS. STAT. RULE 809.86(4) (2021-22), we use a pseudonym instead of the victim's name.   All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] The intimidation of a victim count was originally charged as a felony and later amended to a misdemeanor.

2

¶4 A multiple day trial took place. In the afternoon of the third day of trial, Yancey opted to represent himself. In closing argument, Yancey argued in relevant part that the photos of the house where the alleged shooting took place did not show bullet holes, but rather drill holes, and the officers had lied under oath.

¶5 The jury found Yancey guilty of first-degree recklessly endangering safety while using a dangerous weapon, as a party to the crime, as a lesser included offense of attempted first-degree intentional homicide. The jury also found Yancey guilty of endangering safety while using a dangerous weapon, as a party to the crime, intimidation of a victim, as a party to the crime, and attempted bribery of a witness.

¶6 Yancey filed a motion for postconviction relief. Yancey's motion primarily asserted that: (1) he was denied his constitutional right to a speedy trial; (2) he was deprived of effective assistance of counsel; (3) prosecutorial misconduct occurred; (4) he was denied the right to represent himself; and (5) the circuit court erroneously exercised its discretion by allowing an officer to testify.

¶7 After briefing, the circuit court denied Yancey's motion without an evidentiary hearing. The court found that Yancey's speedy trial claim was conclusory, unsupported, and failed "to allege how any of the delay was attributable to the State." The court next found that Yancey's ineffective assistance of counsel allegations failed because he did not demonstrate prejudice and his theory that police falsified evidence was "completely unsupported." In addition, the court found that Yancey's prosecutorial misconduct and erroneous exercise of discretion claims were "conclusory, undeveloped, and lacking in any legal or factual support." Lastly, the court found that Yancey's claim that he was denied the right to represent himself was contradicted by the record.

3

¶8 Yancey now appeals. Additional relevant facts are referenced below.

## DISCUSSION

### I. Speedy Trial

¶9 On appeal, Yancey first renews his claim that his constitutional right to a speedy trial was violated.

¶10 The Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution guarantee an accused the right to a speedy trial. *State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324. If a speedy trial violation has occurred, the charges against the defendant must be dismissed. *Barker v. Wingo*, 407 U.S. 514, 522 (1972). Whether a defendant has been denied the right to a speedy trial is a question of law that we review independently. *Urdahl*, 286 Wis. 2d 476, ¶10. We accept any findings of fact made by the circuit court unless clearly erroneous. *Id.*

¶11 To determine whether a defendant's right to a speedy trial has been violated, we balance four factors: (1) the length of the delay; (2) the reasons for delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *State v. Borhegyi*, 222 Wis. 2d 506, 509, 588 N.W.2d 89 (Ct. App. 1998).

¶12 The first factor—the length of the delay—is a "triggering mechanism used to determine whether the delay is presumptively prejudicial." *Urdahl*, 286 Wis. 2d 476, ¶12. A post-accusation delay is considered to be presumptively prejudicial when it approaches one year. *Id.* Here, Yancey appears to have been initially arrested on September 12, 2014, and his trial commenced on

January 4, 2016.[3]  As the State concedes, this delay was over a year, which is presumptively prejudicial.  Thus, we review the other three factors.

¶13    The second and third factors—the reasons for the delay and the assertion of the right—we review together as they are interrelated in this case. ***Borhegyi***, 222 Wis. 2d at 509.

¶14    As stated above, Yancey was arrested on September 12, 2014.  The criminal complaint for the attempted murder case was filed September 16, 2014.  On November 13, 2014, Yancey was arraigned, and he requested a speedy trial.  According to Yancey, his attorney withdrew his request for a speedy trial on February 10, 2015, and Yancey wrote to the circuit court objecting to the waiver of his speedy trial rights.  Subsequently, on June 5, 2015, Yancey requested that the court remove his appointed attorney from his case, which the court granted on June 22, 2015.  On September 23, 2015, Yancey's second appointed counsel demanded a speedy trial and agreed that a trial date of December 7, 2015 would satisfy Yancey's demand.  On November 4, 2015, Yancey's second appointed counsel withdrew because Yancey had fired him on a different matter and there was a breakdown in communication.  On November 16, 2015, Yancey waived his speedy trial demand so that his new attorney had enough time to prepare for trial.  Yancey's trial began January 4, 2016.

---

[3] We note that the State calculates the delay in this case from the time of the filing of the complaint to the date the trial began.  The State does not explain or cite any authority why the period of delay should be measured from the date of the complaint rather than the date of Yancey's arrest.  *See **State v. Borhegyi***, 222 Wis. 2d 506, 511-12, 588 N.W.2d 89 (Ct. App. 1998) (calculating the period of delay from the date of the arrest to the date of the trial where the State did not explain why the period of delay should be calculated from the date of the complaint).  Accordingly, we measure the delay from the date of Yancey's arrest to the date of his trial.

¶15    The record reflects that the majority of the delay in this case was the result of Yancey's decision to repeatedly terminate his counsel. A delay caused by the defendant "is not counted" when considering the reasons for a delay. ***Urdahl***, 286 Wis. 2d 476, ¶26. The remainder of the delay was reasonably attributed to the ordinary demands of the judicial system. "[D]elays caused by the government's negligence or overcrowded courts" are counted, but they "are weighted less heavily." ***Id.***

¶16    Further, while Yancey's first attorney demanded a speedy trial, according to Yancey, this request was withdrawn, and the record reflects that he later waived his speedy trial rights. Accordingly, we are not persuaded that the second or third factor weighs in favor of a finding of a violation of Yancey's speedy trial rights. Even if we attributed all of the delay to the State, Yancey does not demonstrate, nor does the record reflect "[a] deliberate attempt by the government to delay the trial in order to hamper the defense[.]" ***Id.***

¶17    In regards to the fourth factor, prejudice, "[c]ourts consider [this factor] with reference to the three interests that the right to a speedy trial protects: prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense." ***Id.***, ¶34. Yancey does not contend that his pretrial incarceration was oppressive or that he was anxious or concerned. Rather, Yancey contends that the delay in starting his trial allowed police time to "add '5' entry holes" to the residence to "frame" him. This also "stalled [his] case to buy time … for [the] landlord and others to change the vinyl exterior siding to switch it to aluminum siding. And add '5' entry holes."

¶18    These allegations are unsupported by the record. During the trial, Yancey's attorney explained outside the presence of the jury that he retained an

investigator to look into Yancey's claim that the house's siding was changed or altered in order to frame Yancey. Trial counsel said that "[t]he investigator went out and talked to the homeowner, who actually lived there. He is the landlord. And the answer was no. The siding has never been changed. Nothing's been done with it whatsoever." Yancey's attorney additionally noted that "we found a neighbor who lives nearby and actually heard the shooting, went over to the event that evening, [and] saw the bullet holes." Counsel said that the neighbor "has lived in the neighborhood about thirteen years, I think she said, and herself knows that the siding was not changed, tampered with, or whatever." As the circuit court found, Yancey's "beliefs that the police falsified evidence are completely unsupported." Thus, the fourth factor does not weigh in favor of a finding of a violation of Yancey's speedy trial rights.

¶19 Therefore, examining the totality of circumstances, we conclude that Yancey's constitutional right to a speedy trial was not violated and the circuit court properly denied Yancey relief. Significantly, Yancey's only claim of prejudice—that the delay allowed the siding to be changed and holes to be added—is unsupported.

## II. Ineffective Assistance of Counsel

¶20 Yancey next contends that he was deprived of effective assistance of counsel.

¶21 To establish ineffective assistance of counsel, a defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant fails to adequately show one prong of the test, we need not address the second. *Id.* at 697.

7

¶22 When deciding whether a defendant is entitled to an evidentiary hearing based on an ineffective assistance of counsel claim, we independently determine "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. "Whether the record conclusively demonstrates that the defendant is entitled to no relief is also a question of law we review independently." *Id.* "If the motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.*, ¶28.

¶23 As the circuit court observed, Yancey's claims of ineffective assistance of counsel are "difficult to decipher[.]" From what we can discern, in his motion for postconviction relief, Yancey asserted that his first appointed attorney was ineffective for not giving him discovery and cancelling his speedy trial demand.[4] Yancey contends that he was prejudiced because his trial was delayed, which allowed "tampering and fabricating evidence of house siding." Relatedly, Yancey also asserted that his third appointed attorney was ineffective for not investigating his claims that the siding on the house was changed.

¶24 The circuit court found that Yancey failed to sufficiently explain, why, even if true, his allegations "would have been reasonably probable to change

---

[4] On appeal, Yancey raises two additional ineffective assistance of counsel arguments with respect to his first attorney—that his attorney was ineffective for advising him to contact Larry, and not filing a motion to compel discovery. Yancey did not raise these claims in his motion, and thus, they are not before us on appeal. *See State v. Allen*, 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433 (stating that an appellate court reviews "only the allegations contained in the four corners of [the defendant's] postconviction motion, and not any additional allegations that are contained in [the defendant's brief]").

the outcome of the trial[.]" We agree. Further, as the circuit court observed, Yancey's "beliefs that the police falsified evidence are completely unsupported," and his "claims about the exterior of the house appearing to have changed in different photographic exhibits completely ignore more plausible explanations[.]" As discussed above, Yancey's attorney told the court that he hired an investigator to look into Yancey's claim about the house being re-sided, and the investigator learned from the landlord and a neighbor that the siding had not been changed. In addition, the neighbor witnessed the bullet holes shortly after the shooting.

¶25 Yancey also appears to argue that his third attorney failed to interview and call a witness, Craig Ford, to testify. He asserts that his attorney should have asked Ford if he planted four bullets at the scene. Yancey, however, points to no evidence that Ford planted four bullets at the scene, why Ford would have done so, or that Ford would have confessed to doing so had he testified at trial.

¶26 Lastly, Yancey appears to argue that his third attorney was ineffective in multiple other respects, including: not moving to get police memo books; not seeking mental health records; not investigating a news report about the shooting; not having a forensic pathologist and a ballistics expert view the scene; not filing a **Denny** motion;[5] conceding his guilt; not moving to strike two jurors for cause; not questioning the owner of the house; not objecting to various things at trial; and, not allowing Yancey to participate in *voir dire*.

---

[5] **State v. Denny**, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984).

¶27 These claims are conclusory and undeveloped. For example, as the State observes, Yancey does not explain how the police memo books or mental health records would have mattered; how investigating the news report would have mattered; what a forensic pathologist or ballistics expert would have found or testified to; who counsel would have alleged committed the crimes if he had filed a ***Denny*** motion; how exactly Yancey believed his attorney conceded his guilt; or why the jurors were biased. Thus, we decline address these claims further. ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶28 In sum, we conclude that the circuit court properly denied Yancey's ineffective assistance of counsel claims without an evidentiary hearing.

### III. Prosecutorial Misconduct

¶29 Yancey next alleges that he is entitled to relief based on prosecutorial misconduct.

¶30 "Prosecutorial misconduct 'can rise to such a level that the defendant is denied his or her due process right to a fair trial.'" ***State v. Lettice***, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996) (citation omitted). However, reversing a conviction on the basis of prosecutorial misconduct is a "drastic step," ***State v. Ruiz***, 118 Wis. 2d 177, 202, 347 N.W.2d 352 (1984), and is reserved for cases where the misconduct "poison[ed] the entire atmosphere of the trial," ***Lettice***, 205 Wis. 2d at 352 (citation omitted). "The determination of whether prosecutorial misconduct occurred and whether such conduct requires a new trial is within the [circuit] court's discretion." ***Id.*** This requires a balancing of multiple factors, including:

> the defendant's interest in being tried on evidence validly before the jury; the public's interest in having the guilty

10

> punished; the public's interest in not burdening the administration of justice with undue financial or administrative costs; the public's interest that the judicial process shall both appear fair and be fair in fact; and the interest of the individuals involved—the witnesses and family of the victim—not to be subjected to undue trauma, embarrassment or inconvenience.

*Ruiz*, 118 Wis. 2d at 202.

¶31    Yancey contends that the initial prosecutor involved in his attempted murder case committed misconduct when he "signed off" on the criminal complaint. Yancey also contends that the prosecutor who tried his cases sought "sympathy for jury to obtain [a] conviction for nephew [sic]."

¶32    The circuit court denied these claims, concluding that they were "conclusory, undeveloped, and lacking in any legal or factual support." We agree. Yancey's prosecutorial misconduct claims in his postconviction motion are conclusory and undeveloped. Accordingly, we decline to address them. *Pettit*, 171 Wis. 2d at 646-47. We will not develop arguments for a party. *Id.* at 647 (stating that "[w]e cannot serve as both advocate and judge").

## IV.    Right to Self-Representation

¶33    Yancey additionally argues that he was denied his right to represent himself at trial.

¶34    A defendant has the right to conduct his or her defense under both the Sixth Amendment of the United States Constitution and article I, section 7 of the Wisconsin Constitution. *State v. Klessig*, 211 Wis. 2d 194, 203, 564 N.W.2d 716 (1997). "A defendant who wishes to invoke the right to self-representation must 'clearly and unequivocally' inform the [circuit] court of this decision." *State v. Egerson*, 2018 WI App 49, ¶11, 383 Wis. 2d 718, 916 N.W.2d 833 (citation

omitted). Whether a defendant's right to self-representation is violated is a question of law that we review independently. *Id.*, ¶10.

¶35 Yancey contends that the circuit court violated his request to represent himself during trial, which prevented him from questioning Larry and Larry's girlfriend's mother, who was present at the time of the shooting. Yancey's claim is disproven by the record. While Yancey initially requested to represent himself prior to the testimony of Larry and Larry's girlfriend's mother, ultimately Yancey chose to proceed with counsel. When Larry and Larry's girlfriend's mother were cross-examined by defense counsel, Yancey had already withdrawn his request to represent himself.

¶36 Subsequently, after Larry and Larry's girlfriend's mother testified, Yancey again told the circuit court he wanted to represent himself, which the court granted. After the court granted Yancey's request to represent himself, Yancey chose to only call one witness, Officer Michelle Angiolo. The court had previously advised Yancey that he could recall any witnesses if necessary. Yancey does not claim that he attempted to call Larry or Larry's girlfriend's mother and the court refused. Yancey's claim therefore is insufficient to entitle him to a hearing.

## V. Erroneous Exercise of Discretion

¶37 Lastly, Yancey contends that the circuit court erroneously exercised its discretion by allowing Officer Patrick Elm to testify. At trial, Officer Elm testified that he specializes in fugitive apprehension, and in September 2014, he was looking for Yancey. When Yancey saw Officer Elm in a marked squad car, he immediately walked away. In Yancey's postconviction motion, he argued that Officer Elm's testimony was prejudicial because Officer Elm could not explain

12

why Yancey walked away without disclosing that Yancey had open warrants or "illegal items."

¶38    On appeal, Yancey abandons the argument he made in his postconviction motion.[6]  Instead, Yancey contends that the person who identified himself as Officer Patrick Elm at trial was *not* in fact Officer Elm.  Yancey alleges that there was an Officer Elm talking to someone from Fox 6 News, and that was not the Patrick Elm who testified.  Yancey, however, does not present any evidence demonstrating the person who identified himself as Officer Patrick Elm at trial is not really Officer Patrick Elm.  Thus, Yancey is not entitled to relief on this claim.

## CONCLUSION

¶39    Therefore, for all of the reasons above, we conclude that the postconviction court properly denied Yancey's motions without a hearing and we affirm.  Yancey's claims are conclusory, undeveloped, or disproved by the record.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (concluding issues raised in the circuit court but not raised on appeal are deemed abandoned).