COURT OF APPEALS
DECISION
DATED AND FILED

July 11, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP441-CR**

Cir. Ct. No. 2016CF4964

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEFFREY ALLEN JACOBI,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed.*

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Jeffrey Allen Jacobi appeals a judgment of conviction for operating while intoxicated (OWI) as a seventh or subsequent

offense. On appeal, Jacobi contends that: (1) his constitutional right to a speedy trial was violated; (2) the prosecutor improperly referred to Jacobi's prior OWI convictions; (3) the trial court erroneously allowed the State to use a variety of other inadmissible evidence; and (4) he is entitled to a new trial in the interest of justice. For the reasons discussed below, we affirm.

## BACKGROUND

¶2 On November 8, 2016, Jacobi was charged with OWI as a 7th, 8th, or 9th offense. An amended information added one count of operating with a prohibited alcohol concentration (PAC) as a 7th, 8th, or 9th offense.

¶3 According to the criminal complaint, on the evening of November 6, 2016, K.R. was driving west on Brady Street in the City of Milwaukee when a motorcycle driver, who she later identified as Jacobi, rear-ended her car. After the crash, Jacobi walked up to K.R.'s vehicle and attempted to open one of the car doors. He then left the scene. Approximately twenty minutes later, Jacobi returned to the scene and K.R. pointed him out to officers. Jacobi's right foot was bare and he had a black leather boot on his left foot. A right leather boot was located under the motorcycle at the crash scene.

¶4 Officer Richard Lopez smelled a strong odor of alcohol on Jacobi's breath and observed that Jacobi had bloodshot eyes, was swaying while he stood, and slurred his speech. Jacobi performed a horizontal gaze nystagmus (HGN) test and exhibited six of six clues. Jacobi refused all other field sobriety tests. Based on these observations, Officer Lopez believed Jacobi was intoxicated.

¶5 Between the time of the filing of the complaint on November 8, 2016, and the start of Jacobi's trial on April 12, 2021, there were multiple

adjournments of the trial attributable to the State and the defense, scheduling conflicts, and COVID-19 restrictions. On August 6, 2019, Jacobi moved to dismiss the charges on the ground that he was denied his constitutional right to a speedy trial. After briefing and a hearing, the trial court denied the motion to dismiss. On March 19, 2021, Jacobi filed a motion to reconsider, which the trial court denied.

¶6 During the trial, the State presented testimony from several witnesses, including K.R., Officer Lopez, and expert witness Jennifer Greene, who testified about Jacobi's likely alcohol concentration at the time of the crash using retrograde extrapolation. The State also presented video from the body camera of Officer Frank Salinsky, which recorded his conversation with K.R. and his interactions with Jacobi. The video files were labeled "OWI 7-2," "OWI 7-4," and "OWI 7-8."

¶7 Jacobi testified that on the day of the crash he was at his mother's house until "7:15 or 7:30" in the evening and had nothing to drink. He admitted to hitting K.R.'s car on Brady Street, saying that he "tapped her on the bumper and ended up dumping the bike." Jacobi struggled to get up and his boot got stuck underneath the floorboard. Jacobi then went over to K.R.'s car to trade numbers and insurance and make sure she was okay. K.R. did not get out of the car and pulled ahead. Jacobi then went to a bar to get help lifting his motorcycle up since K.R. was not getting out of the car to help. At the bar, Charles Skibbe, who he did not know, made a comment about him being bootless. After they bantered back and forth, Skibbe bought him a few shots of Jack Daniels and he had a mixed drink. Jacobi testified that he was at the tavern for about 30 or 45 minutes and then returned to the scene of the crash. Jacobi said that he was under the influence of alcohol when he spoke to the police, but not when he drove.

¶8 Skibbe, who testified by phone because he was in federal custody, said that he was in the bar when Jacobi came in with one boot on. Skibbe said that he did not smell any alcohol on Jacobi and Jacobi did not slur his speech, but he "seemed a little shook up." Skibbe said that he told Jacobi that he could not help him pick up the motorcycle due to a shoulder issue, and that he bought Jacobi two shots and a mixed drink. He testified that Jacobi was at the bar for about 30 or 45 minutes.

¶9 The jury found Jacobi guilty of OWI and operating with a PAC. The court entered judgment on the OWI conviction, and the PAC conviction was dismissed. This appeal follows. Additional relevant facts are referenced below.

## DISCUSSION

¶10 On appeal, Jacobi makes four primary arguments. Jacobi contends that: (1) his constitutional right to a speedy trial was violated; (2) the prosecutor improperly referred to Jacobi's prior OWI convictions; (3) the trial court erroneously permitted the State to use a variety of other inadmissible evidence; and (4) he is entitled to a new trial in the interest of justice. We address each argument below.

### I. Speedy Trial

¶11 Jacobi first contends that he was denied his constitutional right to a speedy trial.

¶12 The Sixth Amendment to the United States and article I, section 7 of the Wisconsin Constitution guarantee an accused the right to a speedy trial. *State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324. If a speedy trial violation has occurred, the charges against the defendant must be dismissed.

4

*Barker v. Wingo*, 407 U.S. 514, 522 (1972). Whether a defendant has been denied the right to a speedy trial is a question of law that we review independently. *Urdahl*, 286 Wis. 2d 476, ¶10. We accept any findings of fact made by the trial court unless clearly erroneous. *Id.*

¶13 To determine whether a defendant's right to a speedy trial has been violated, we balance four factors: (1) the length of the delay; (2) the reasons for delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *See State v. Borhegyi*, 222 Wis. 2d 506, 509, 588 N.W.2d 89 (Ct. App. 1998). As we have previously stated:

> [t]he right to a speedy trial is not subject to bright-line determinations and must be considered based on the totality of circumstances that exist in the specific case. Essentially, the test weighs the conduct of the prosecution and the defense and balances the right to bring the defendant to justice against the defendant's right to have that done speedily.

*Urdahl*, 286 Wis. 2d 476, ¶11 (citation omitted).

¶14 The first factor—the length of the delay—is a "triggering mechanism used to determine whether the delay is presumptively prejudicial." *Id.*, ¶12. A post-accusation delay is considered to be presumptively prejudicial when it approaches one year. *Id.* Here, Jacobi was arrested on November 6, 2016, and Jacobi's trial began on April 12, 2021—a period of 1,618 days. The State concedes that the delay in this case exceeded one year and was presumptively

5

prejudicial.[1]  We agree, and conclude that this factor weighs in favor of Jacobi's constitutional speedy violation claim, and turn to the next three factors.

¶15    The second factor—the reasons for delay—requires us to "identify the reason for each particular portion of the delay[.]" *Id.*, ¶26.  We then "accord different treatment to each category of reasons." *Id.*  We have stated that:

> A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State, while delays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily.  On the other hand, if the delay is caused by something intrinsic to the case, such as witness unavailability, that time period is not counted.

*Id.* (citations omitted).

¶16    Looking at the delays in this case, we agree with the State that only a small portion of the delay is properly attributed to the State, and no part of the delay was due to "[a] deliberate attempt by the government to delay the trial in order to hamper the defense[.]" *Id.*

¶17    As stated above, Jacobi was arrested on November 6, 2016.  The trial was initially scheduled for 183 days later—May 8, 2017.  The State asserts that this period should not be counted against the State because it was necessary

---

[1] We note that the State counts the delay in this case from the time of the filing of the complaint on November 8, 2016, to the date the trial began on April 12, 2021.  However, in *State v. Borhegyi*, 222 Wis. 2d 506, 511-12, 588 N.W.2d 89 (Ct. App. 1998), we specifically rejected an argument from the State that the defendant's speedy trial rights commenced with the filing of the criminal complaint, and instead measured the delay from the date of the defendant's arrest to the date of the trial.  The State does not cite any authority or develop an argument in support of its determination that the delay is measured from the date of the filing of the complaint.  Accordingly, in this case, we measure the delay from the date of Jacobi's arrest to the date of his trial.

for the parties to prepare for trial. Even if we assume that this period counts against the State, we do not weigh it heavily as there was no objection from Jacobi or request for a speedy trial. *See Barker*, 407 U.S. at 531 (stating that "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant").

¶18 Subsequently, the May 8, 2017 date was adjourned due to the State's failure to turn over an expert witness report. The trial was rescheduled to September 5, 2017. This 120-day delay is properly attributed to the State.

¶19 On September 1, 2017, trial counsel moved to adjourn the trial because he had another trial that was expected to go until September 5, 2017. On September 5, 2017, the trial court asked defense counsel if he was prepared for Jacobi's trial, noting that "I know you were in trial until 5:30 on Friday." Trial counsel responded that he did not know if the court was going to grant the adjournment so he spent time over the weekend preparing; however, trial counsel stated that Jacobi "would feel better if he had some time to sit down with me." The court stated it would provide a new date for the trial. The trial was then scheduled for January 22, 2018. Subsequently, the State requested that the trial be moved to an earlier date, October 30, 2017, due to a witness conflict. Based on the record, we conclude that the 55-day delay from September 5, 2017 to October 30, 2017 is attributed to the defense.

¶20 On October 30, 2017, the trial court adjourned the trial again because Jacobi had appealed the trial court's decision that he had improperly refused a blood test. A new trial date was set for August 6, 2018. Jacobi argues

that this delay should be attributed to the State because the State could have gone to trial without the refusal evidence. It was Jacobi's decision, however, to appeal. As a result, the 280-day delay from October 30, 2017 to August 6, 2018, is attributed to the defense. The State had no reason to forgo the use of the refusal evidence given that it had prevailed in the trial court.

¶21 On August 3, 2018, trial counsel moved to adjourn the August 6, 2018, trial because Jacobi's mother, who the defense intended to call as a witness, was unavailable for medical reasons. The trial court granted the motion and rescheduled the trial to January 7, 2019. This delay of 154 days cannot be attributed to the State.

¶22 On January 7, 2019, the trial court adjourned the trial, stating that "I've got another trial that has priority over this one, so I've got to adjourn this." The trial was rescheduled to March 25, 2019. This 77-day delay is properly attributed to the State, but it is not weighed heavily. *See **Urdahl***, 286 Wis. 2d 476, ¶31.

¶23 On March 20, 2019, the State moved to adjourn the trial due to the unavailability of two witnesses. The court granted the motion and rescheduled the trial to July 29, 2019. On June 7, 2019, the court granted another adjournment due to the unavailability of a State witness and rescheduled the trial to September 3,

2019. The 162 days from March 25, 2019 to September 3, 2019, is not counted against the State as it was due to witness unavailability.[2] *See id.*, ¶26.

¶24 On September 3, 2019, Jacobi moved to adjourn his trial due to the unavailability of a witness. The court granted Jacobi's adjournment request and rescheduled the trial for January 20, 2020. Subsequently, the trial was rescheduled one day later to January 21, 2020, due to an oversight that this date was Martin Luther King Jr. Day. The 139-day delay from September 3, 2019, to January 20, 2020, is not attributed to the State as it was due to the unavailability of a defense witness. The one-day delay from January 20, 2020, to January 21, 2020, is properly attributed to the State, but is not weighed heavily.

¶25 On January 21, 2020, the trial court rejected Jacobi's constitutional speedy trial claim. The trial was rescheduled to May 4, 2020. This 104-day delay is not attributed to the State.

¶26 Due to the COVID-19 pandemic, the trial was then delayed several times from May 4, 2020, to December 7, 2020. Jacobi argues that these delays should be attributed to the State because the pandemic was "not a factor intrinsic

---

[2] Jacobi acknowledges that witness unavailability is generally not counted. Jacobi nonetheless argues that the State failed to exercise "reasonable diligence" to ensure that its witnesses were available at the time the State consented to the trial dates. In support, Jacobi cites *Borhegyi*, 222 Wis. 2d at 517. *Borhegyi*, however, discussed reasonable diligence in the context of the fourth factor—whether the defendant was prejudiced—not the second factor. *See id.* (stating that counsel must exercise reasonable diligence before a witness's unavailability is prejudice for which the State is responsible). Thus, we do not find Jacobi's argument persuasive.

to the case." *See id.* ("[I]f the delay is caused by something intrinsic to the case … that time period is not counted.").[3]

¶27 In response, the State cites numerous cases from other jurisdictions that have held that delays due to COVID are not properly attributed to the State. *See e.g.*, *Cotney v. State*, 503 P.3d 58, 67 (Wyo. 2022) ("[T]he delay caused by the district court's continuances of the trial due to the COVID-19 pandemic is neutral because neither [the defendant] nor the State caused the delay."); *State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App. 2022) ("Delay caused by the onset of a pandemic cannot be attributed as fault to the State."); *State v. Paige*, 977 N.W.2d 829, 843 (Minn. 2022) ("We do not weigh against the State the fact that the Minnesota judicial system responded to the then-unclear and largely unprecedented risks posed by COVID-19 by postponing jury trials."). Jacobi does not attempt to distinguish these cases, and we find them persuasive and do not attribute the 217-day delay due to the pandemic to the State.

¶28 On December 1, 2020, Jacobi moved to exclude any expert testimony concerning the analysis of Jacobi's blood for the presence of alcohol. That same day, at the final pretrial conference, the court ordered the State to provide additional information regarding the expert to the defense by February 15, 2021. The trial was then rescheduled from December 7, 2020, to April 12, 2021.

---

[3] We note that in his reply brief, Jacobi observes that on March 22, 2020, our supreme court issued an order suspending jury trials, but carved out an exception whereby a trial court or party could request a jury trial. *See* In Re the Matter of Jury Trials During the COVID-19 Pandemic (S. CT. ORDER, Mar. 22, 2020). Jacobi contends that neither the trial court nor the State requested that an exception be made in Jacobi's case, thus this delay should be attributed to the State. Jacobi, however, raises this argument for the first time in his reply brief. We need not address arguments that are raised for the first time in a reply brief, *see* *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998), and we decline to do so here.

This 126-day delay from December 7, 2020, to April 12, 2021, is attributed to the State.

¶29 The trial commenced on April 12, 2021. A total of 1,618 days passed from the date of Jacobi's arrest to the start of the trial. Of those days, 1,111 can be attributed to Jacobi, unavailable witnesses, and COVID. Of the remaining 507 days, 183 days were for trial preparation, 77 days for court congestion, and one day due to a scheduling mistake. These 261 days are attributed to the State, but are not weighed heavily. *See Barker*, 407 U.S. at 531. This leaves 246 out of 1,618 days that may be counted heavily against the State.

¶30 Turning to the third factor, we examine whether Jacobi asserted his right to a speedy trial. *See Urdahl*, 286 Wis. 2d 476, ¶11. Jacobi admits that he did not file a speedy trial demand. While Jacobi filed a motion to dismiss on constitutional speedy trial grounds on August 6, 2019, he in effect waited approximately twenty-six months from the date of the first scheduled trial before asserting his right to a speedy trial.

¶31 In regards to the fourth factor, prejudice, "[c]ourts consider [this factor] with reference to the three interests that the right to a speedy trial protects: prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense." *Id.*, ¶34. "The third interest is the most significant because 'the inability of a defendant [to] adequately … prepare his case skews the fairness of the entire system.'" *Id.* (alternation in original; citation omitted).

¶32 Jacobi concedes that prevention of oppressive pretrial incarceration interest is not at issue as he was released on bond. We agree.

11

¶33    Jacobi argues that the second interest—the prevention of anxiety and concern—was implicated because he faced prison if he was convicted. However, approximately two years of delay were due to Jacobi and unavailable defense witnesses. Thus, we are not persuaded that Jacobi can show prejudice due to anxiety and concern.

¶34    In regards to the third interest, Jacobi points to the fact that defense witness Christine Jacobi passed away on September 11, 2018, before a deposition could be taken, which impaired his defense.

¶35    In *State v. Provost*, 2020 WI App 21, ¶47, 392 Wis. 2d 262, 944 N.W.2d 23, this court stated that "the death of an exculpatory witness during a delay in bringing the defendant to trial generally weighs in favor of finding that the defendant was prejudiced by the delay." We concluded, however, that the death of the witness did "not weigh heavily, if at all, in favor of finding that the delay prejudiced [the defendant's] ability to present a defense." *Id.* We observed that the witness at issue had died less than a year after the defendant was initially charged and the delays were attributed to the defense. *Id.*, ¶48.

¶36    Similarly, here, we do not find that the death of Christine weighs "heavily, if at all, in favor of finding that the delay prejudiced [Jacobi's] ability to present a defense." *Id.*, ¶47. The first trial date, May 8, 2017, was adjourned for 120 days to September 5, 2017, due to the State's failure to turn over an expert witness report. At that point, less than one year had passed from the date Jacobi was arrested. Subsequently, Jacobi moved for an adjournment of the September 5, 2017 trial date, and then appealed the trial court's order finding his refusal unlawful. Thus, the 371 days between September 5, 2017, and September 11, 2018, the date Jacobi's mother passed, cannot be attributed to the State.

¶37     Jacobi also argues that Skibbe was unavailable to testify in person due to the delays. Jacobi contends that because Skibbe did not testify in person, the jury was "unable to visually assess Skibbe and use their observations to determine the credibility of Skibbe's testimony." However, as the State observes, Jacobi does not explain why the jury would have been more likely to find Skibbe credible had he testified in person rather than by telephone.

¶38     Further, only a small part of the delay in which Skibbe could have testified can be attributed to the State. Defense counsel was unable to locate Skibbe before the scheduled March 25, 2019 trial, and later determined that he was in federal custody. Prior to March 25, 2019, when Skibbe could have presumably appeared in person, only a small part of the delay can be attributed to the State. As detailed above, the adjournment of the first trial date for the State to provide an expert witness report resulted in a 120-day delay that can be attributed to the State. However, the next three adjournments leading up to March 25, 2020, were caused by Jacobi's motion to adjourn the trial, his appeal of the refusal order, and his motion to adjourn due to an unavailable witness. Thus, the bulk of the delay was not caused by the State.

¶39     Balancing the above factors, we conclude that Jacobi's right to a speedy trial was not violated. While the length of the delay was presumptively prejudicial, there were valid reasons for most of the delay. Further, given Jacobi's failure to timely assert the right and the minimal, if any, prejudice that was incurred, Jacobi's right to a speedy trial was not violated. Thus, the trial court correctly denied Jacobi's requests to dismiss the complaint.

### II.    OWI References

¶40    Jacobi argues that the prosecutor improperly told the jury that Jacobi had six prior OWI offenses when the prosecutor showed the jury the video files labeled "OWI 7-2," "OWI 7-4," and "OWI 7-8."    According to Jacobi, the prosecutor referred to the file names out loud thirteen times over the course of the trial.[4]  Jacobi acknowledges that trial counsel did not object or move for a mistrial, but contends that this constituted prosecutorial misconduct and plain error.

¶41    A prosecutor's statements constitute misconduct when the statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Davidson*, 2000 WI 91, ¶88, 236 Wis. 2d 537. 613 N.W.2d 606 (citations omitted).  "Plain error is error so fundamental that a new trial or other relief must be granted[.]" *State v. Vander Linden*, 141 Wis. 2d 155, 159, 414 N.W.2d 72 (Ct. App. 1987).  "The error, however, must be 'obvious and substantial,' and courts should use the plain error doctrine sparingly." *State v. Miller*, 2012 WI App 68, ¶18, 341 Wis. 2d 737, 816 N.W.2d 331 (citation omitted).

¶42    We agree with the State that Jacobi's prosecutorial misconduct and plain error claims fail because there is no evidence or reason to believe that the jury understood the video file names and the prosecutor's references to the files to mean that Jacobi had six prior OWI convictions.  The numbers associated with the videos could mean anything to the jury—the officer's numbers, the number of the

---

[4] In the trial court, in response to a motion to stay the penalties pending appeal, the prosecutor indicated that she said the files out loud for the record as "OWI seven dash four" or "OWI seven dash eight."

14

call the police responded to that day, or even the seventh day of the month when the video could have been downloaded. In addition, there was no evidence or argument at trial presented about Jacobi's prior convictions and when Jacobi testified, he was not asked about his prior convictions.

¶43    Thus, there was no prosecutorial misconduct because the prosecutor did not tell the jury that Jacobi had six prior convictions. Likewise, there was no plain error because there is no indication that the jury understood the video file names to mean that Jacobi had six prior convictions.[5]

### III.    Alleged Trial Court Errors

### A.  Jacobi's Refusal to Answer Police Questions

¶44    Jacobi first contends that the trial court erroneously permitted the State to elicit testimony that Jacobi refused to answer police questions, which violated his constitutional right to remain silent. Jacobi argues that the trial court should have struck this testimony.

¶45    During trial, the prosecutor asked a police officer to describe Jacobi's response to police questions, and the officer answered, "He did not want to answer the questions, I believe." Jacobi's defense counsel objected and argued that Jacobi had a constitutional right not to answer questions. The court responded, "Ladies and gentleman, that is correct, and we can move on from there."

---

[5] We note that the State also contends that any error relating to the video file names was harmless. Because we conclude that there was no error, we do not address the State's harmless error argument. *See* **State v. Blalock**, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

¶46    Here, even if we assume that the officer's single statement was improper—and we emphasize we are not making that finding—any error was harmless.  An error is harmless if the party who benefitted from the error "shows 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  *State v. Monahan*, 2018 WI 80, ¶33, 383 Wis. 2d 100, 913 N.W.2d 894 (citations omitted).

¶47    The officer's statement came immediately after the jury saw a video of the officer questioning Jacobi.  As a result, the jury had already seen that Jacobi seemed like he did not want to answer questions.  In addition, immediately after the officer's statement, defense counsel stated that a person has a constitutional right not to answer questions.  The trial court then said "Ladies and gentlemen, that is correct[.]"  The jury thus heard that Jacobi had a constitutional right not to answer questions.  Accordingly, there was no harm and nothing for the trial court to strike.  Any error was harmless.  *Id.*

### B.  Expert Testimony

¶48    Second, Jacobi argues that the trial court erred in permitting the State's witness, Greene, to testify as an expert.

¶49    Relevant to this issue, at a pretrial hearing on November 23, 2020, the State indicated that its toxicologist, Laura Hedden, had retired or left the crime lab, so it would be calling a peer reviewer.  The defense requested that the State file a motion to apprise the defense of the identity of the witness and her opinion.

¶50    Subsequently, a letter was filed from Greene.  The letter stated that a blood sample was collected from Jacobi, examined for the presence of ethanol at the State Crime Laboratory, and a toxicology report was drafted on November 21,

2016. The letter stated that Greene had examined the laboratory notes, analytical data, and test results. The letter then indicated that she found "the interpretations and conclusions that were reported on State Crime Laboratory Toxicology Report 1 for R16-4463 to be appropriate and scientifically sound," and that she was "adopting the reported results and opinions as my own independent conclusions."

¶51　Prior to trial, Jacobi moved to exclude the expert testimony on the ground of a discovery violation, pursuant to WIS. STAT. § 971.23 (2021-22).[6] The court denied the motion, concluding that,

> the defense has been very, very well advised about the substance of the laboratory tests and how the peer reviewer Greene is going to be going through all that. And I think that's really what it comes down to is notice and the ability to prepare for that witness. And I think that's clearly available here for the defense.

¶52　Jacobi argues that the letter from Greene was insufficient because it did not reference a letter from Hedden regarding retrograde extrapolation and did not contain any information about Greene's anticipated testimony on that subject. Jacobi, however, does not dispute that he knew the results of Hedden's letter regarding retrograde extrapolation, or that Greene was going to testify that her calculations and results were the same. Thus, as the trial court determined, Jacobi had notice and knew what the expert was going to testify. Accordingly, we conclude that the expert's testimony was properly admitted.

---

[6] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

### C. Use of Hypothetical Questions

¶53    Third, Jacobi contends that the trial court improperly allowed Greene to answer hypothetical questions based on facts not in evidence. In particular, Jacobi points to testimony from Greene regarding Jacobi's alcohol concentration at the time of the crash. He argues that this testimony was improper because there was no evidence that the alleged alcohol had been fully absorbed into Jacobi's bloodstream at the time he operated the motorcycle. Additionally, Jacobi points to testimony from Greene that she was told to assume Jacobi weighed 200 pounds and had ten drinks.

¶54    We disagree with Jacobi. We find *State v. Giese*, 2014 WI App 92, 356 Wis. 2d 796, 854 N.W.2d 687, instructive. In *Giese*, when extrapolating the defendant's blood alcohol level at the time that he crashed his car, the expert made "certain assumptions: that the alcohol was fully absorbed before the incident and that [the defendant] ingested no additional alcohol afterwards." *Id.*, ¶8. The defendant sought to exclude the blood test and testimony about retrograde extrapolation in part because "the probative value of the evidence could not be established because the retrograde extrapolation was based upon assumptions concerning when the driving occurred and when the alcohol was ingested in relation to the alleged driving." *Id.*, ¶9. In addition, the defendant argued that the State could not prove the facts underlying the expert's opinion, "i.e., the time of the driving, the time of the drinking, and that no drinking occurred between the time of the driving and the time of the blood test." *Id.*, ¶10.

¶55    This court concluded that the retrograde extrapolation expert testimony was properly admitted in *Giese*. *Id.*, ¶25. We stated that the defendant's "real dispute is not with the science the expert relied upon in his case

18

but with the assumptions the expert made." *Id.*, ¶28. We noted that "[i]t is true that the calculation would be more reliable if the expert had more facts about exactly when and what [the defendant] drank," but the "questions go to the weight of the evidence, not to its admissibility." *Id*. Thus, the defendant was "free to challenge the accuracy of the expert's assumptions." *Id.*

¶56 As in *Giese*, here, Jacobi's challenge goes to the weight of the testimony, not to its admissibility. Greene testified that if Jacobi drank alcohol after the crash, the retrograde extrapolation would not have been accurate. As the trial court found when it denied Jacobi's motion to dismiss the second count after the close of the evidence, it was up to the jury to decide to believe or disbelieve Jacobi's story that he drank alcohol after the crash. The jury thus could have found, as the expert assumed, that the alcohol Jacobi consumed was all absorbed prior to the crash.

¶57 Likewise, in regards to Jacobi's weight, it was up to the jury whether to believe or disbelieve that he weighed 200 pounds. As the trial court found, there was no evidence of Jacobi's exact weight; however, the jury saw videos of Jacobi shortly after the crash and could have concluded that his weight was around 200 pounds. Thus, again, any issue with how much Jacobi weighed went to the weight of the evidence, not its admissibility. Accordingly, we are not persuaded that allowing Greene to answer hypothetical questions was improper.

## IV. New Trial in the Interest of Justice

¶58 Finally, Jacobi argues that he is entitled to a new trial in the interest of justice. The interest of justice may warrant a new trial when the real controversy has not been fully tried or when there was a miscarriage of justice. WIS. STAT. § 752.35. We exercise our power to grant a discretionary reversal only

19

in exceptional cases. ***State v. Sugden***, 2010 WI App 166, ¶37, 330 Wis. 2d 628, 795 N.W.2d 456.

¶59 Based on our review of the record, we conclude that this is not an exceptional case warranting a new trial in the interest of justice. As discussed above, we reject Jacobi's arguments and he has not presented any other basis that would justify the exercise of our discretionary reversal power.

¶60 Therefore, for all of the reasons above, we reject Jacobi's arguments and we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.